e Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 1123 | DATE | 1/20/2004 |
| CASE TITLE | | Carbajal vs. Capital One | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants plaintiff's second amended motion for class certification. Plaintiffs are directed to provide defendants with a draft form of class notice on or before 1/27/04, and the parties are directed to confer to attempt to reach agreement on the form of notice. A proposed agreed notice, or separate proposals if the parties cannot agree, is to be submitted to the Court by no later than 2/5/04. Status hearing set to 2/9/04 at 9:30 a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 2 3 2004 | |
| | Notified counsel by telephone. | | date docketed | 46 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | OR courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JAN 2 3 2004

| | |
|---|---|
| MOISES CARBAJAL; GEORGIA REDD; and RON BUTLER,<br><br>Plaintiffs,<br><br>vs.<br><br>CAPITAL ONE, F.S.B.; CAPITAL ONE SERVICES, INC.; and WESTMORELAND AGENCY, INC.,<br><br>Defendants. | Case No. 03 C 1123 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Moises Carbajal, Georgia Redd, and Ron Butler have sued Capital One, FSB, Capital One Services, Inc., and Westmoreland Agency, Inc., for alleged violations of the Fair Debt Collection Practices Act. Plaintiffs received solicitations from the defendants to transfer delinquent debts owed to other creditors to a new Capital One Visa credit card account. They contend that this constituted debt collection activity subject to the FDCPA, and they assert that Capital One's solicitation improperly obscured the FDCPA-required "validation" notice and misleadingly advised debtors that they would still be able to dispute the old debt after its transfer to Capital One. The Court previously denied defendants' motion to dismiss plaintiffs' third amended complaint for failure to state a claim. *Carbajal v. Capital One, FSB,* No. 03 C 1123, 2003 WL 22595265 (N.D. Ill. Nov. 10, 2003). Plaintiffs have moved to certify two classes, consisting of all persons in Illinois (Class A) and Indiana (Class B) to whom defendants sent



similar solicitations on or after February 13, 2002. For the reasons stated below, the Court grants plaintiffs' motion.

## Discussion

To obtain class certification, plaintiffs must satisfy the four requirements of Federal Rule of Civil Procedure 23(a) and one of the requirements of Rule 23(b). *E.g., Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Rule 23(a)'s four requirements for class certification are that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representatives' claims or defenses are typical of those of the class; and (4) the representatives will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(a). Plaintiffs seek certification of both classes under Rule 23(b)(3), which requires, in addition to the above, a showing that questions of law or fact common to all class members predominate over individual issues, and that the class action mechanism is superior to other available means of adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). We deal with each of these requirements in turn, following the Supreme Court's admonition that we must conduct a "rigorous analysis" of whether the proposed classes satisfy Rule 23's requirements. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

1.  **Rule 23(a) requirements**

Though plaintiffs have not attempted to quantify the members of the proposed classes, it is undisputed that Rule 23(a)'s numerosity requirement is met. The proposed classes also satisfy the Rule's commonality requirement. Rule 23(a) requires only that there be at least one issue common to all class members, so long as the issue is one whose determination will advance the

litigation. *See, e.g., Alkire v. Irving*, 330 F.3d 802, 819 (6th Cir. 2003); *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993). In this case, the claims of each of the class members arise from the receipt of one or more of a series of mass mailings; the plaintiffs challenge those mailings' compliance with the FDCPA. This is sufficient to meet Rule 23(a)'s commonality requirement. "Common nuclei of fact are typically manifest where, like in the case *sub judice*, the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

A named plaintiff's claim is considered typical of the claims of the class for purposes of Rule 23(a) if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and is based on the same legal theory as those of the class members. *Keele*, 149 F.3d at 594; *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.3d 225, 232 (7th Cir. 1983). This is plainly so with regard to the named plaintiffs' FDCPA claims in this case.

Defendants do not dispute that Redd's claims are typical of those of the class. Defendants argue, however, that the other named plaintiffs' claims are not typical because those plaintiffs are subject to unique defenses not applicable to class members generally. The claims of a proposed class representative are considered atypical if the representative is subject to a unique defense that is reasonably likely to be a major focus of the litigation. *See Rainy Lake One Stop, Inc. v. Marigold Foods, Inc.*, 195 F.3d 430, 437 (8th Cir. 1999); *Koos v. First National Bank*, 496 F.2d 1162, 1164 (7th Cir. 1974). To put it another way, if the class representative is likely to be preoccupied with a unique defense, his claims are atypical. *In re CBC Companies, Inc.*

*Collection Letter Litigation,* 181 F.R.D. 380, 385 (N.D. Ill. 1998).

Defendants contend that the claims of Carbajal and Butler are atypical because those plaintiffs are subject to setoffs arising from prior accounts they had with Capital One unrelated to the debts that were the subject of the solicitations they challenge in this case. Specifically, Carbajal is claimed to have previously had a "small business" credit card account with Capital One on which, defendants contend, he defaulted and on which the balance due is just over $2,000. Carbajal is also claimed to have had a separate Capital One credit card account on which he defaulted in 1998; he allegedly obtained a new Capital One credit card account in September 2002 to which the balance from the old account was transferred. Defendants contend that the balance due on this account at the time the present suit was filed was just over $1,000, but they do not contend that the account is in default. Butler is claimed to have a car loan with Capital One on which he owes about $6,000; defendants do not contend that the loan is in default.

Defendants have made only a half-hearted effort to show that these purported setoffs are likely to become a focus of the litigation, let alone a major focus. First of all, defendants do not contend that the referenced prior debts of Carbajal and Butler are in any way related to their debts that were involved in the solicitations challenged in this case. Second, Butler's car loan and Carbajal's second ($1,000) credit card debt are not claimed to be in default; put another way, there is no contention that either Butler or Carbajal has breached any contract or other obligation with regard to these debts.

Defendants' suggestion that unrelated, unmatured debts may be set off against a debt collector's liability under the FDCPA is unpersuasive, and again defendants have made only the barest of efforts to argue the point. They cite (in a footnote!) only an Indiana case indicating that

4

under that state's common law, a bank may set off the account of a depositor against an unmatured debt owed to the bank. *See First Bank of Whiting v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187, 198 (Ind. App. 1987). But Carbajal lives in Illinois, not Indiana, and the law in Illinois is different: an Illinois bank may set off funds on general deposit only against *matured* debts, absent express authority to the contrary (which defendants have not suggested exists in Carbajal's case). *Tri State Bank of East Dubuque v. Colby*, 141 Ill. App. 3d 807, 811, 490 N.E.2d 1037, 1039 (1986).[1]

Perhaps more importantly, defendants have cited no authority suggesting that either Illinois' or Indiana's common law rule regarding setoffs supports allowing a defendant to offset the plaintiffs' unrelated debts against defendants' alleged liabilities under the FDCPA. The general rule that applies to common law setoffs is that they are permitted "only when the debts are 'mutual,' and debts arising at different times out of different circumstances are not mutual." *Soo Line R. Co. v. Escabana & Lake Superior R. Co.*, 840 F.2d 546, 551 (7th Cir. 1988). Though supposedly offsetting obligations "held by the same parties in the same capacity (that is, as obligor and obligee)" may be considered mutual and thus subject to common law setoff, *In re Doctors Hospital of Hyde Park, Inc.*, 337 F.3d 951, 955 (7th Cir. 2003), such is not the case here: an obligation that exists pursuant to a liability imposed by a federal statute is not held "in the same capacity" as a contractual debt. Defendants cite no authority for the proposition that an entity liable for statutory damages for violating a federal statute like the FDCPA would be entitled to offset unrelated (let alone unmatured) debts. Rather, the cases they cite involved the

---

[1] Indeed, it appears that unmatured debts are not subject to setoff under Illinois common law at all. *See Bank of Chicago-Garfield Ridge v. Park Nat'l Bank*, 237 Ill. App. 3d 1085, 1091, 606 N.E.2d 72, 76 (1993).

5

offset of the very debts out of which the plaintiffs' claims arose. *See, e.g., Channell v. Citicorp National Services, Inc.*, 89 F.3d 379 (7th Cir. 1996). Even if debts of that type satisfy the "mutuality" test, the debts of Carbajal and Butler identified by defendants are not of that type. In sum, there is no basis to believe that any defenses particular to Carbajal and Butler will be a focus of the litigation or will divert their attention or that of class counsel.[2] The Court finds that each of the named plaintiffs' claims is typical of those of the class within the meaning of Rule 23(a).

The final requirement of Rule 23(a) is that the proposed representatives will fairly and adequately represent the interests of the class. This requirement "has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, ... (2) the named representative must have sufficient interest in the outcome to ensure vigorous advocacy, ... and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1995) (citations and internal quotation marks omitted). Defendants do not contest the competence of class counsel, the law firm of Edelman, Combs & Latturner, and the Court has rejected defendants' argument that Carbajal and Butler have antagonistic interests due to their other alleged debts owed to Capital One. Defendants argue, however, that each of the plaintiffs is confused regarding the claims made in the case, that Redd made misrepresentations in her deposition, and that Butler has conflicting interests because he wants to keep his involvement in this case from his employer and because,

---

[2] Even if setoffs of Carbajal's and Butler's unrelated debts were allowed, there is no reason to believe that they would end up as a significant focus of the case; the setoff would likely involve nothing more than a mere calculation.

6

as a plaintiff in a number of other consumer-law cases, he is effectively dependent on the Edelman firm.

The Court disagrees. What defendants characterize as confusion regarding the sequence of events is more likely attributable to the fact that defendants sent repeated similar mailings, and what they characterize as confusion about legal matters is more likely attributable to the plaintiffs' lack of sophistication and relative unfamiliarity with the inner workings of federal civil litigation. In any event, as our colleague Judge Ruben Castillo noted in the *Gammon* case,

> [t]hese facts are entitled to little weight . . . when assessing adequacy of representation. As the Seventh Circuit has stated, "[T]he class representative's role is limited. It was found not to be enough to defeat a class certification in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir.1981) (citations omitted) ....

*Gammon*, 162 F.R.D. at 317.

With regard to plaintiff Butler, the fact that he would prefer that his employer did not know about his involvement in litigation has no impact on his adequacy as a class representative. There is nothing to suggest that this would, for example, cause him to advocate an unfair settlement in the hopes of an early end to the lawsuit, and in any event the disposition of the case by settlement or otherwise is subject to the Court's review for fairness. The fact that Butler has been involved as a plaintiff in prior consumer litigation likewise does not make him an inadequate class representative; the Court rejects defendants' contention that as a repeat plaintiff he is somehow "dependent" on class counsel.

Each of the named plaintiffs has, in his or her deposition, demonstrated adequate

7

knowledge of the relevant facts and the basis for the claims, an understanding of the role of a class representative, and a commitment to fulfill that role. There is no question that a class representative is required to be conscientious, *see Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991), and to "understand the basic facts underlying his claims." *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 109 (N.D. Ill. 1996). But the named plaintiffs each meet this standard; defendants' arguments (both those referenced above and those we have not specifically discussed) do not tilt the scales in the opposite direction.

## 2. Rule 23(b) requirements

Because plaintiffs have established each of the requirements of Rule 23(a), we turn to the requirements set forth in Rule 23(b)(3). As indicated earlier, Rule 23(b)(3) requires plaintiffs to establish that questions of law or fact common to all class members predominate over individual issues and that the class action mechanism is superior to other available means of adjudication.

The Court is persuaded that common issues predominate over individual issues. The primary focus of the litigation will be the indisputably common issue of whether the forms of solicitation used by defendants violate the FDCPA. This plainly can be determined on a class-wide basis. The only individual issue identified by defendants as undercutting plaintiffs' claim of predominance of common issues is the selfsame setoff issue discussed earlier. As the Court has determined, there is no basis for setoff of the class members' prior, unrelated debts against defendants' FDCPA liability, and in any event, defendants have made no effort to show that any significant number of class members are likely to owe prior debts to the defendants.

The Court is also convinced that a class action is a superior means of adjudicating the parties' dispute. A class action will allow for a single adjudication of whether defendants'

practices comport with the FDCPA. This is the most efficient means of determining the legality of mass solicitations to consumers who are all similarly situated.

Defendants argue that it is likely, given the large number of class members, that any class award would amount to a *de minimis* recovery by any particular plaintiff due to the FDCPA's limitations on class recovery of statutory damages. *See* 15 U.S.C. § 1692k(a)(2)(B)(ii). But the fact that any one individual plaintiff can recover only a modest amount ($1,000) absent actual damages actually makes the claims more suitable for determination in a class action, as no individual plaintiff would have a significant incentive to sue on his or her own. "Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). As the Seventh Circuit said in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997), "a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries to not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* at 344.

The fact that particular individual plaintiffs could recover $1,000 in statutory damages if they sued individually does not alter this analysis, for the reality is that the choice is not between a class action and a multitude of individual actions, but rather between a class action and *this particular* individual action and maybe a handful more. The class members who might be inclined to shoot for the bigger amount will be clearly advised in the Court's notice to

prospective class members that they can forego membership in the class and take on the risks and somewhat larger rewards of individual litigation if they so choose. But to disallow a class action simply because of the hypothetical possibility of multiple individual actions would effectively sound the death knell to use of the class action in the consumer law context. And as former District Judge Prentice Marshall put it in rejecting a similar argument in a Truth in Lending Act case, "[l]arge classes are typical in [such] cases, because creditors often have hundreds of thousands of customers within a single jurisdiction. For these creditors the threat of a class action has a potent deterrent effect. Eliminating that deterrent for all large cases would emasculate the enforcement provisions of the Act." *Sarafin v. Sears, Roebuck & Co.*, 73 F.R.D. 585, 588 (N.D. Ill. 1977). The same is true in this case. And the converse is also true: if defendants' practices are determined to have complied with the FDCPA, that determination will foreclose the possibility of further FDCPA litigation in Illinois and Indiana by those whom defendants have solicited.

Defendants contend that the Seventh Circuit has disapproved of the use of class actions when class members' recovery is likely to involve a *de minimis* amount. But *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000), cited by defendants for this proposition, holds no such thing. In *Crawford,* the court reviewed a district court's refusal to permit intervention by class members objecting to a FDCPA settlement, and its approval of the settlement over their objection. The class was certified under Rule 23(b)(2), and thus the 214,000 class members were not to receive personal notice or the opportunity to opt out of the settlement. The terms of the defendant barred the defendant from further use of the form collection letter that the class had challenged; awarded the single named plaintiff $2,000; and

10

provided for a $5,500 donation by the defendant to a law school clinic and payment of a fee of $78,000 to class counsel. The other 214,000 class members were to receive nothing, and by virtue of the settlement they would have been deprived of their ability to file separate actions. The intervenors learned of the settlement because they had filed similar cases that were pending before another judge in the same district.

The Seventh Circuit overturned the settlement. The critical element in its reasoning was that the district court had violated settled law by not requiring notice and an opportunity to opt out of a class action for money damages. *Id.* at 881-82. This element is absent in the present case, in which class members will be notified of the certification of the class and their rights to opt out and file separate actions.

The court in *Crawford* also criticized the terms of the settlement. It noted that the size of the class, when combined with the FDCPA's cap of damages in class actions to the lesser of $500,000 or 1% of the defendant's net worth, *see* 15 U.S.C. § 1692k(a)(2)(B)(ii), ensured that class members would receive no more than $2.34 and possibly less. *Id.* at 882. The smaller classes certified in the separate cases to which the intervenors were party, however, could bring each class member as much as $250. Under the circumstances, the Seventh Circuit was critical of a settlement in which the class members would receive nothing. It stated that "the fact that [the named plaintiff] receives $2,000 and the other 200,000+ [class members] nothing is quite enough to demonstrate that the terms should not have been approved under Rule 23(e)." *Id.*

In the present case, of course, no proposed settlement is pending; the question is whether a class should be certified to begin with. The Court does not believe that *Crawford* stands for the proposition that a class should not be certified when it is likely that a class-wide settlement

11

would produce a minimal recovery. Rather, the Court believes that *Crawford* must be read in light of the primary concern that gave rise to the rejection of the settlement – the lack of notice and the ability of class members to opt out. If the class notice clearly spells out the likely maximum level of awards to class members and advises that they may choose to file separate actions in which they might recover a larger amount, the primary problem that gave rise to the Seventh Circuit's concerns will be eliminated, and individual class members will be able to make fully informed choices as to how they wish to proceed.

Defendants also argue that they will be entitled to set off the debts that were the subject of the solicitations against any FDCPA liability they may have to those who accepted the solicitation and transferred their debts to Capital One. The Seventh Circuit has, in fact, suggested that a debt collector sued in an FDCPA case may be able to offset against its liability the bad debt that it was attempting to collect. *See Crawford*, 201 F.3d at 880 (defendant "would be entitled to a setoff or counterclaim, on account of the bad debts, exceeding any [FDCPA] recovery"; citing *Channell*, 89 F.3d 379). But defendants' argument ignores the fact that their solicitation, if accepted, had the effect of transforming the recipient's debt into one that was no longer past due; upon acceptance of the solicitation, the previously past due debt was rolled into a Capital One Visa credit card account, a form of revolving credit which the debtor was entitled to pay off over time. Defendants have provided no support for the proposition that they should be able to set off (or assert in a counterclaim) debts on which they have no right, under agreements they themselves drafted, to immediate payment. And they have not attempted to show that any significant proportion of those who accepted the solicitation failed to make any payments for the first three billing cycles, the predicate that defendants' solicitation said was

necessary for collection activities to resume.

In short, the class members who did not accept the solicitation have no "related" debts that could be the subject of a setoff or counterclaim, and those who did accept the solicitation, at least as far as we know at this point, have no "past due" debts that are properly setoff under *Crawford* and *Channell* as defendants read those cases. Thus we cannot say that setoffs and counterclaims are likely to become a significant part of this litigation,[3] let alone that they would exceed the possible recovery of the class. If further developments show otherwise, it might become appropriate to entertain the possibility of modifying the class definition to exclude those who accepted the solicitation or those who accepted the solicitation and then defaulted on their payment obligations regarding their Capital One Visa account. But at this point, there is no basis at this point to confine the class to those who did not accept the solicitation.

For these reasons, the Court finds that plaintiffs have demonstrated that a class action is a superior means of adjudicating the controversy than individual actions.

## Conclusion

For the reasons stated above, the Court grants plaintiffs' second amended motion for class certification. Plaintiffs are directed to provide defendants with a draft form of class notice on or before January 27, 2004, and the parties are directed to confer to attempt to reach agreement on the form of notice. A proposed agreed notice, or separate proposals if the parties cannot agree, is to be submitted to the Court by no later than February 5, 2004. The case is set for a status

---

[3] Furthermore, as suggested in *Channell,* any such setoffs might require nothing more than "a mechanical calculation" which would not impact on whether the case should be maintained as a class action. *Channell,* 89 F.3d at 387.

hearing on February 9, 2004 at 9:30 a.m.

Date:   January 20, 2004

_____
MATTHEW F. KENNELLY
United States District Judge

14