# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOISES CARBAJAL; GEORGIA REDD; and RON BUTLER, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 03 C 1123 ) |
| CAPITAL ONE, F.S.B.; CAPITAL ONE BANK, CAPITAL ONE SERVICES, INC.; and WESTMORELAND AGENCY, INC., | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Moises Carbajal, Georgia Redd, and Ron Butler filed this class action on behalf of themselves and similarly situated persons, alleging that Capital One, FSB, Capital One Services, Inc., and Westmoreland Agency, Inc. violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e & 1692g. Plaintiffs and defendants have both moved for summary judgment. Defendants have also moved to bar the testimony and report of plaintiffs' expert witness. For the reasons stated below, the Court grants the motion to bar, denies plaintiffs' motion for summary judgment, and grants in part and denies in part defendants' motion for summary judgment.

### Facts

At issue in this case are three mailings that plaintiffs received from defendants in

1

November 2002, January 2003, and March 2003. Pl. Mot., Exs. A, I, and N.[1] There is evidence that each of these was the initial mailing received by one or more class members. The mailings offered the recipients the opportunity to transfer delinquent debt owed to NCO Financial Systems, Inc. to a new Visa credit card account with Capital One. The front page of each mailing stated in large print "Now You Can Pay Off Your Debt - at 0% Interest - and Build a Good Payment Record with a Capital One Visa." The rest of the page explained that the recipient could "enjoy full Visa credit card benefits" and pay off their debt by transferring their "charged off account balance" to a new Capital One Visa account. If the recipient accepted the offer, the letter promised that "interest and fees built up since your account charged off will be forgiven." In short, the mailings were both debt collection letters and credit card account solicitations. Because the mailings had a debt collection function, they had to comply with the Fair Debt Collection Practices Act.

The FDCPA requires a debt collector, either in the initial communication with the debtor or five days thereafter, to provide the debtor notice of his right to dispute the debt. 15 U.S.C. § 1692g. Commonly referred to as the validation notice, this notice must advise the debtor that he has thirty days from receipt of the initial communication to dispute the debt identified in that communication. *Id.*

The mailings sent by the defendants placed the validation notice in small print on the reverse side of the letter inside a box at the top of the page. All three mailings contained the same validation notice:

---

[1] A copy of the November 2002 letter is attached to this Memorandum Opinion in Appendix 1.

> If this is the first letter you have received from us, please be aware that this communication is from a debt collector, and it and others from us are an attempt to collect a debt. Any information obtained will be used for that purpose. Once you accept this offer the debt will be owed to Capital One. Unless you dispute the validity of all or part of this debt within 30 days after receipt of this notice, we will assume the debt is valid. However, if you notify us in writing within the 30-day period, we will mail a copy of verification of the debt or the judgment to you and will provide you with the address of the original creditor for this debt. Please remember that even if you make a payment, you still have the remainder of the 30 days to dispute your debt. If this is not the first letter you have received from us regarding this debt, please be aware that you still have 30 days from receipt of our original letter to you to dispute this debt.

Debtors were allegedly alerted to the validation notice by a statement located at the bottom of the front side of the letter which read, "please see reverse and enclosed Capital One question and answer section for important information about your debt, debt reporting and this offer."

## Discussion

Summary judgment may be granted only when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiffs charge defendants with two violations of the FDCPA in connection with their attempts to collect on defaulted debts. First, they assert that the language used by defendants in the debt validation notice was misleading in violation of § 1692e. Second, plaintiffs argue that defendants violated § 1692g by overshadowing the required debt validation notice. The Court will address each argument in turn.

Section 1692e of the FDCPA provides that a debt collector cannot use "false, deceptive or misleading" means to collect a debt. Plaintiffs assert that Capital One's solicitation misled

3

debtors regarding their right to dispute the debt owed to NCO. Specifically, plaintiffs take issue with the second to last sentence of the debt validation notice included in all three letters sent to the plaintiffs, which states "[p]lease remember that even if you make a payment, you still have the remainder of the 30 days to dispute your debt." Plaintiffs argue that this is misleading. They contend that once a debtor signs up for the Capital One Visa card, his or her old debt is transferred to the Visa card, thereby extinguishing any defenses to the debt that the debtor may have had vis-a-vis the original creditor and rendering moot the right to dispute the debt. Defendants assert that Capital One allows debtors to dispute the old debt, and does so even after the thirty-day period guaranteed by the FDCPA has run.

The parties have submitted deposition testimony from Elsa Miller, a support specialist for Capital One. Miller testified that if a debtor accepts Capital One's offer and then disputes his or her debt, Capital One handles the dispute. Pl. Mot., App. D, Miller Dep. at 19. If the dispute is valid, the Capital One account is closed, and the debt is returned to NCO. *Id.* If the debtor had already made payments to Capital One, those payments are refunded to the debtor and the trade line reported to the credit bureau is deleted. *Id.* at 35-36; *see also* Pl. Mot., App. D, Capital One Disputes Policies. Based on this testimony, defendants argue that the statement in the validation notice (that a customer who accepts Capital One's offer can still exercise his right to dispute the debt) is true and accordingly does not violate the FDCPA.

Plaintiffs continue to argue that the statement is misleading. They contend that transfer of a debt to Capital One constitutes a novation that wipes out defenses the debtor had against the original creditor. But the undisputed evidence shows that Capital One does honor disputes regarding the debt. Based on this evidence, it appears that when it determines the dispute to be

valid, it effectively treats the transfer of the debt as having been rescinded, thus allowing the debtor to address his dispute with the original creditor.

Plaintiffs also argue that though Capital One may currently allow debtors to dispute the old debt, it could change this policy in the future. Were Capitol One to do so, the validation notice would in fact become misleading. But that is not the state of affairs that is at issue in this lawsuit. There is no genuine issue of fact regarding the truth of the validation notice. Defendants are entitled to summary judgment on plaintiffs' § 1692e claim.

Plaintiffs' second claim is that defendants violated § 1692g by overshadowing the required validation notice in the letters sent to debtors. The Seventh Circuit has ruled that merely including a validation notice in a debt collection letter is not enough; the notice must not be overshadowed, contradicted, or presented in a confusing way. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). Plaintiffs contend that the validation notice in the mailings from Capital One was presented in a confusing way because it was buried in the middle of a more attractive and comprehensible credit card offer. They also point out that the notice was on the back of the credit card offer and contend that the front side lacked a sufficient reference to the notice.

*Chuway v. Nat'l Action Financial Svcs., Inc.*, 362 F.3d 944 (7th Cir. 2004), contains the Seventh Circuit's most recent discussion of what it takes for a plaintiff to avoid summary judgment on the question of whether a debt collection letter is confusing. Though *Chuway* did not involve an overshadowing claim, the discussion is instructive here. The court first rejected the defendant's contention that a plaintiff must always offer a survey or other empirical evidence of confusion. *Id.* at 948. In a case in which "it is apparent from reading the letter that it is unclear, and the plaintiff testifies credibly that she was indeed confused and that ... she is

representative of the type of people who received that or a similar letter," summary judgment for the defendant is inappropriate. *Id.* "But if it is unclear whether the letter would confuse intended recipients ..., then to make out a prima facie case the plaintiff has to go further and present evidence (beyond her own say-so) of confusion, for example, in the form of a carefully designed and constructed consumer survey." *Id.*

The plaintiffs in this case contend that the defendants' letter is confusing because it obscures the fact that it seeks to collect a debt and hides the required validation notice. They contend, first of all, that "[t]his would be evident in the eyes of a casual observer," Pl. Resp. to Def. Mot. for Summ. Judg. at 2, such that no "empirical" or expert testimony need be offered to avoid summary judgment. But they also offer the testimony of Dr. Timothy Shanahan, a professor and literacy expert at the University of Illinois at Chicago Center for Literacy. Shanahan specializes in studying readability, which he describes as a "statistical ... estimate of a type of population or a portion of population that would comprehend or understand a particular document." Pl. Mot. Summ. Judg. at 21-22. To determine the readability of the Capital One letters, he used computer software that gave a grade level estimate to each letter.[2] He concluded that the November 2002 letter had an overall reading level of "high ninth grade," meaning that 37 million adults (or 17 percent of adults) would struggle to understand the letter. Pl. Mot. Summ. Judg., Ex. A at 2. Shanahan separately analyzed the validation notice on all three of the mailings and found it to read at a tenth grade level, which would mean that 59 million American adults would struggle to understand it. *Id.* at 3. In addition to analyzing the documents using computer

---

[2]Shanahan explained that public health experts strive to produce documents at forth grade reading levels based on the recognition that twenty percent of Americans read at a third or fourth grade level. Pl. Mot. Summ. Judg., Ex. A at 2.

6

software, Shanahan supplemented his report with his own evaluation of readability based upon design features, such as the use of color, size of print, location of print, and line length.

Defendants argue that Shanahan's testimony should be excluded because it is irrelevant to plaintiffs' claims and because parts of it fail to meet the standards for admissibility of expert testimony laid out in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). Their first argument is that evidence submitted to prove an "overshadowing" claim of the type made by plaintiffs is relevant only if it measures whether the notice increased confusion among debtors vis-a-vis a benchmark consisting of the bare notice required by the FDCPA. This notion of a benchmark arises from two Seventh Circuit decisions regarding validation notices, *Barlett* and *Johnson*. In *Bartlett*, the court provided a "safe-harbor" validation notice that it believed provided the required information to debtors in a way that comports with the FDCPA. *Barlett*, 128 F.3d at 502. In *Johnson*, the court considered an overshadowing claim based on debt collection letters that did not track the *Bartlett* letter. The court reversed the grant of a motion to dismiss, concluding that the plaintiffs were entitled to an opportunity to present evidence extrinsic to the debt collection letter to show it was confusing. The court noted that the plaintiffs would have to show that the collection letter "unacceptably *increases* the level of confusion," not simply that it was confusing, because "many unsophisticated consumers would be confused even if the letters they received contained nothing more than a statement of the debt and the statutory notice." *Johnson*, 169 F.3d at 1060 (emphasis in original). In this regard, the court stated that "a survey (or other empirical evidence) would be useful only if it included a benchmark of consumers' understanding after reading the unelaborated statutory notice plus a statement of debt, or perhaps after reading the *Bartlett* safe-harbor letter." *Id.*

7

Shanahan's analysis regarding the overall readability of the defendants' letters fails to meet the relevance standard that the Seventh Circuit established in *Johnson*. Despite the Seventh Circuit's clearly expressed directive, plaintiffs did not ask Shanahan to compare the letter to a bare statement of the statutory notice or some other bare-bones version of a debt collection letter like the example offered in *Bartlett*. In response to defendants' request to strike Shanahan's testimony, plaintiffs argue that the fact that the letter as a whole was at a ninth grade reading level is enough to make the testimony relevant, as a jury could figure out for itself whether an "unsophisticated debtor" reads at a ninth-grade level. That might make sense were this Court considering the matter afresh, without the benefit of *Johnson*. But the Seventh Circuit has made it clear that it considers empirical evidence of confusion in FDCPA cases relevant only if it includes a comparative element. Plaintiffs' argument amounts to a request to overrule or disregard *Johnson*, something this Court is not free to do.

Shanahan's testimony regarding overall readability is also unhelpful to the fact finder, and thus inadmissible under *Daubert* and Federal Rule of Evidence 702, because it does not bear on the particular claim of confusion made by the plaintiffs in this case. "[S]cientific testimony must 'fit' the issue to which the expert is testifying to the extent that it is tied to the facts of the case and will aid the jury in resolving a factual dispute." *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995) (citing *Daubert*, 509 U.S. at 591). As noted earlier, plaintiffs' contention is that the defendants' letters "were presented to plaintiffs and class members in such a way as to make the credit card solicitation overshadow all other material contained in the mailing as a whole." Pl. Resp. to Def. Mot. for Summ. Judg. at 1-2. Shanahan's opinion that the letter as a whole reads at a ninth grade level, and that the validation notice reads at a tenth grade

level, has no real bearing on the plaintiffs' overshadowing claim as they have defined it.

Shanahan provides other opinions that do have a bearing on the overshadowing claim as plaintiffs have defined it. For example, he states the following with regard to one of the defendants' letters:

> This [letter] is a double-sided colored, oversized document (14" x 8.5") which appears to be a new credit card offer for the recipient, but is actually an attempt to collect on a purported old debt – something that is only indicated on the obverse of the document and this statement is embedded within particularly difficult language that is placed in especially long lines of text (45 picas or about 1 inch longer than lines that can be read easily (Heines, 1984; Osborne, 2001; Schriver, 1997; Tinker, 1963). The credit card offer material placed prominently on the front side of this document is provided in significantly shorter lines, with greater variation of type font and line length, and greater amounts of white space and color (all factors that made the credit card offer significantly more legible and readable than the explanation of debt collection on the reverse side). The relative amount of information about the credit card offer, and the legibility design (font choice, line length, leading, print size, etc.) appears designed to obscure the fact that the document is an attempt to collect a debt or to get some acknowledgment of the accuracy of the debt.

Shanahan Report at 2.

Rule 702 and *Daubert* both require, among other things, that an expert's testimony be based on reliable principles and methods, applied reliably to the facts. *See, e.g., United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002). Defendants argue that what they call Shanahan's "legibility" opinions are insufficiently reliable to be admissible, largely because they are not based on science or testing. But the Seventh Circuit has made it clear that an expert is not required to substantiate his opinions through testing particularized to the specific case if the science he is using has already been shown experimentally to be reliable. *See United States v. George*, 363 F.3d 666, 672-73 (7th Cir. 2004). There is no question that there is a science of legibility; the Seventh Circuit's own website includes a link to an article discussing at length

what makes a text more or less legible, relying on "the scientific studies that form the basis for textual design concepts." *See* www.ca7.uscourts.gov/Rules/Painting_with_Print.pdf at 113.

The real question, however, is whether Shanahan's conclusions were reached by applying that science or whether they rest on his unsupported say-so. Based on Shanahan's report, the Court concludes that it is the latter. Shanahan provides supporting citations for only one aspect of his opinion, the reference to "especially long lines of text." But that is a minor element of Shanahan's claims; by itself it is insufficient to support his overall conclusion that the letter would not be understood as an attempt to collect a debt. The remainder of what Shanahan says about the legibility of the notice appears in his report to be based simply on observation and inference, not on application of science. This is insufficient. "[P]ersonal observation [is] not sufficient to establish a methodology based in scientific fact." *Deimer*, 58 F.3d at 345 (citing *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1107 (7th Cir. 1994)).

Shanahan's legibility opinions also suffer from a related flaw – his report does not explain them. "As we so often reiterate: 'An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'" *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)).

For these reasons, the Court grants defendants' motion to strike Shanahan's profferd testimony.

This does not mean, however, that defendants are entitled to summary judgment. As noted at the outset of this discussion, plaintiffs contend their claim is viable with or without expert testimony. *See* Pl. Resp. to Def. Mot. for Summ. Judg. at 2. Defendants largely avoid

10

addressing this contention on its merits. They argue, instead, that plaintiffs have not made such a contention. *See* Df. Combined Mem. at 6. That is plainly incorrect. Defendants provide only a general citation to plaintiffs' complaint as support for their argument. It is well established, however, that a plaintiff is not required to plead a legal theory in the complaint. *See, e.g., McCullah v. Gadert,* 344 F.3d 655, 659 (7th Cir. 2003). In any event, the complaint adequately alleged that the notice was confusing. *See* Fourth Am. Comp. ¶ 26.

Having chosen to take the position that plaintiffs were not forwarding a claim based on the notice alone, defendants have offered little to support a contention that the notice is sufficiently clear as a matter of law to entitle them to summary judgment. They point out that the law does not require the validation notice to appear on the front side of the page, and that the front of the letter contains language directing the consumer to the reverse side for "important information." All of that may be so, but it does not address the core of the plaintiffs' claim, which arises from the de-emphasis of the "important information" reference, as well as the validation notice, by the typefaces used, the placing of the references, and the fact that the references are allegedly buried in what an unsophisticated consumer would take as a solicitation for a credit card, not an attempt to collect a debt. *Chuway* makes it clear that neither empirical nor expert testimony is required to sustain the plaintiff's burden in a FDCPA case regarding confusion, at least so long as a reasonable fact finder could find the letter to be confusing on its face. *Chuway,* 362 F.3d at 948. This is such a case.

For these reasons, the Court denies defendants' motion for summary judgment. The Court likewise denies plaintiffs' motion for summary judgment; without Shanahan's testimony, plaintiffs' claim that the required notices were overshadowed is one that can be resolved only by

11

a fact finder.

## Conclusion

The Court grants defendants' motion to bar plaintiffs' proffered expert testimony [docket # 70], denies plaintiffs' motion for summary judgment [docket # 72] and grants in part and denies in part defendants' motion for summary judgment [docket #70]. The case is set for a status hearing on February 24, 2005 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 15, 2005

# CapitalOne®

CAP 0490



*Cristo Matt Long,*

*Now You Can Pay off Your Debt—at 0% Interest—and Build a Good Payment Record with a Capital One® Visa®* **Credit Card!**

*Cristo,*
*enjoy full Visa credit card benefits, tailored especially for your needs:*

- **Initial credit limit of $100**
- **Unsecured line of credit**
- **0% APR on your charged-off debt for the life of your Capital One account**
- **Save $3,333 now—built up interest and fees removed from your balance**
- **9.9% Introductory annual percentage rate (APR) on new purchases until 2004**
- **No annual fee**

*Build your payment record!*

**When you take advantage of this unique opportunity, your charged-off account balance will be transferred into a "Special Purchase" segment of your new Capital One Visa account. You'll pay a 0% APR on this Special Purchase segment. Plus, you'll pay back only $99,999,999 of your charged-off balance—Interest and fees built up since your account charged off will be forgiven.**

*Get your charged-off account updated with the Credit Bureaus upon payment!*

**Once Capital One receives your first payment, the credit bureaus will be notified that your charged-off debt has been paid in full if the debt is being reported to the credit bureaus.* However, if Capital One does not receive a payment in the first three billing cycles, your account will be closed and collection activities will resume on the full amount, including all interest and fees that have built up since your account charged off.**

*To request our Capital One Visa card simply complete the attached Guaranteed Acceptance Certificate and return it in the reply envelope provided!*

**If you have questions about this offer, please review the enclosed letter and Question and Answer section.**

- *Pay $0 of the interest and fees built up since charge-off*

- *0% APR on your charged-off debt for the life of your Capital One account*

- *Guaranteed credit limit increases up to a maximum of $5,000 as your charged-off debt is paid down*

- *9.9% APR on new purchases until 2004*

*Return Your Guaranteed Acceptance Certificate by 12/14/2002!*

To accept by phone, please call 1-800-999-9999 between the hours of 8 a.m. and 10 p.m., Monday–Thursday; between 8 a.m. and 8 p.m., Friday; and between 8 a.m. and 5 p.m., Saturday (ET). When you call, your account will be serviced by The Westmoreland Agency® (an affiliate of Capital One) or an agency working on its behalf. Please use the following Confirmation Code when you call Capital One: 700199990896. The representative will not be able to access your account information without this Confirmation Code.

Your minimum monthly payment will be 2% of your outstanding balance or $10, whichever is greater. However, if your balance is less than $10, your minimum monthly payment will equal your balance amount.

\* PLEASE SEE REVERSE AND ENCLOSED CAPITAL ONE QUESTION AND ANSWER SECTION FOR IMPORTANT INFORMATION ABOUT YOUR DEBT, DEBT REPORTING AND THIS OFFER.

©2002 Capital One Services, Inc. Capital One and The Westmoreland Agency are federally registered service marks. All rights reserved.

▲ Detach and return in the postage-paid envelope provided. Use only black or blue ink on this Acceptance Certificate. ▲





**Guaranteed Acceptance Certificate**

APPLICANT INFORMATION *(continued)*
SOCIAL SECURITY NUMBER

DATE OF BIRTH

7001-8

HOME PHONE

APPLICANT INFORMATION

CURRENT EMPLOYER

CURRENT BUSINESS PHONE

If this is the first letter you have received from us, please be aware that this communication is from a debt collector, and it and others from us are an attempt to collect a debt. Any information obtained will be used for that purpose. Once you accept this offer the debt will be owed to Capital One. Unless you dispute the validity of all or part of this debt within 30 days after receipt of this notice, we will assume the debt is valid. However, if you notify us in writing within the 30-day period, we will mail a copy of verification of the debt or the judgment to you and will provide you with the address of the original creditor for this debt. Please remember that even if you make a payment, you still have the remainder of the 30 days to dispute your debt. If this is not the first letter you have received from us regarding this debt, please be aware that you still have 30 days from receipt of our original letter to you to dispute this debt.

## *Some common questions about this special Capital One Visa credit card offer ...*

*Q.* Why is Capital One making me this offer?

*A.* If your payment record needs improving, we want to help. By accepting this new Capital One credit card, you have a chance to build a good payment record and to enjoy the convenience of a credit card while also paying no interest on your charged-off debt.

*Q.* Why is a "good payment record" important?

*A.* Establishing a good payment record will help you qualify for mortgages, car loans and other forms of credit.

*Q.* Can this credit card help me build my payment record?

*A.* Yes, this credit card gives you the opportunity to show that you can meet regular payment requirements. By paying at least your minimum payment on time every month, you demonstrate the kind of financial responsibility that lenders look for when they evaluate your creditworthiness.

*Q.* How will my charged-off account be reflected with the credit bureaus?

*A.* When you accept this offer and make your first payment to Capital One, the credit bureaus will be updated with the new information about your account if the debt is being reported. However, if your charged-off debt is older than seven years, it should no longer be reported to the credit bureaus. In that case, acceptance of this offer would not result in your charged-off debt being reported as paid in full.

*Q.* What is a Special Purchase segment?

*A.* The balance transferred from your previous account (your charged-off debt) will be held on your account in a Special Purchase segment. No interest is charged on the Special Purchase segment.

*Q.* How are payments applied to my overall balance?

*A.* In general, your monthly payment will first be applied to any fees or finance charges. The remainder of your payment will be applied to your outstanding balances in the Purchase, Cash Advance and Special Purchase segments of your account.

*Q.* How can I increase my credit limit?

*A.* For every $100 of the charged-off debt you pay off, we will automatically increase your credit limit by $50, up to a maximum of half your charged-off debt. Your maximum credit limit will be rounded down to the nearest $100 and will not exceed $5,000. You'll receive each credit limit increase no later than two billing periods after your payment is received.

**CAP 0491**

*Q.* How do I accept this offer?

*A.* Just complete and return the enclosed Guaranteed Acceptance Certificate to Capital One in the postage-paid envelope provided.